**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

ROBERT D. WILLIAMSON,      )
          Plaintiff,      )
                         )
        v.               )      CAUSE NO.: 4:10-cv-70-PRC
                         )
MICHAEL J. ASTRUE,      )
Commissioner of the Social Security    )
Administration,            )
          Defendant.     )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Robert D. Williamson on August 30, 2010, and Plaintiff's Memorandum in Support of his Motion for Summary Judgment [DE 16], filed by Plaintiff on March 28, 2011. Plaintiff requests that the July 10, 2009, decision of the Administrative Law Judge to deny his disability insurance benefits be reversed or, alternatively, remanded for further proceedings. On June 30, 2011, the Commissioner filed a response, and on July 19, 2011, the Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On July 31, 2006, Plaintiff filed an application for Supplemental Security Income, alleging a disability onset date of August 26, 2005. Plaintiff's application was denied initially and upon reconsideration.

A hearing was held on May 8, 2009, before Administrative Law Judge ("ALJ") Gerard Rickert, at which Plaintiff, his attorney, Plaintiff's witness George Williamson, and vocational expert ("VE") Bonnie Gladden appeared. On July 10, 2009, the ALJ issued a decision denying

Plaintiff's application, and on July 14, 2010, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A.    Background

Plaintiff was 46 years old at the time of the ALJ's decision, and 42 years old at the date of alleged onset of disability.  Plaintiff has a high school education, and prior to the onset of his impairment he worked as a welder, a factory line worker, and a truck driver.

### B.    Medical Evidence

On November 27, 2006, Dr. Bitzer, a state agency medical consultant, assessed Plaintiff's functional capacity.  Dr. Bitzer noted that Plaintiff was limited in his ability to grip and manipulate hand controls, and was particularly limited in his ability to grossly manipulate with his right hand, but that he retained good finger dexterity.  Dr. Bitzer also found that Plaintiff had no limitations in his left arm and hand.  Dr. Bitzer opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds.  He could stand, walk and/or sit for 6 hours in an 8 hour work day. According to Dr. Bitzer, Plaintiff should be restricted from more than occasionally stooping, balancing, kneeling, crouching or crawling and should never climb ladders, ropes or scaffolds.

On February 20, 2007, another state agency medical consultant, Dr. Gotanco, evaluated Plaintiff's capacity.  Dr. Gotanco found that Plaintiff could occasionally lift 20 pounds and

frequently lift 10 and that he could stand, walk and/or sit for 6 hours in an 8 hour work day.  Dr. Gotanco restricted Plaintiff from ever climbing ladders, ropes or scaffolds, or more than occasionally crawling.  Dr. Gotanco opined that Plaintiff should be limited from more than occasionally operating hand controls, handling or fingering with his right hand.  Dr. Gotanco opined that Plaintiff could reach and feel frequently with his right hand and arm.

On March 21, 2007, Dr. Ritchie, Plaintiff's treating orthopedist, diagnosed Plaintiff with Reflex Sympathetic Dystrophy Syndrome ("RSDS").  Dr. Ritchie opined that although Plaintiff could not perform his past work, he could perform light work.

On September 19, 2007, another of Plaintiff's treating physicians, Dr. Salvacion, opined that Plaintiff had very limited use of his right arm for use in meaningful employment.

On November 19, 2007, Plaintiff was evaluated by Dr. Blonsky, a neurologist and doctor of pain medicine.  Plaintiff complained that he began suffering gradual soreness and numbness in his right arm while working at his job as a truck driver in 2005 and continued to experience shooting pain from his fingers up his arm.  After reviewing his medical history and performing a neurological and musculoskeletal examination, Dr. Blonsky did not agree with the previous diagnosis of Complex Regional Pain Syndrome ("CRPS")/RSDS, concluding that Plaintiff's symptoms were "consistent with local nerve irritability."  He recommended interdisciplinary chronic pain management treatment such as the program available at the Pain and Rehabilitation Clinic of Chicago, where he served as director.

On February 19, 2008, the Midwest Rehabilitation Clinic assessed Plaintiff's capacity.  The therapists at the clinic concluded that, although Plaintiff's performance during testing was inconsistent, he showed the ability to perform a sedentary to light physical demand level job.  The

therapists also noted that Plaintiff had the ability to improve his condition.

On February 28, 2008, Dr. Greatting, another of Plaintiff's treating physicians, concluded that Plaintiff could not return to his previous employment, but could perform work between a sedentary and light level. Dr. Greatting asserted that Plaintiff could occasionally handle up to 20 pounds, frequently handle up to 10 pounds, and constantly handle negligible weight. He also concluded that Plaintiff had reached his maximum medical improvement and would no longer be under Dr. Greatting's care.

## C.    Mental Health Evidence

On June 12, 2007, Dr. Anne Morgan, PhD, conducted a psychological evaluation of Plaintiff. She reported that Plaintiff had low energy, loss of pleasure, irritability, feelings of uselessness, disrupted sleep, and a weight loss of 20 pounds over nine months. Dr. Morgan opined that Plaintiff was experiencing increasing depression and a sense of loss, and that his anxiety and depression were having a significant negative effect on the outcome of his pain treatment.

## D.    Plaintiff's Testimony

At the administrative hearing on May 8, 2009, Plaintiff testified that he suffers from CRPS in his right arm, and that he is right-handed. Plaintiff stated that he has no other medical problems limiting his ability to work.

Plaintiff testified that he feels constant pain from his fingertips into his shoulder, made worse by movement and touch. He cannot tolerate heat or cold. Because of the pain, Plaintiff testified, he relies on his left hand; however, he is able to use his right arm a little. He can lift a can of soda or carry a glass of milk with it. According to Plaintiff, the pain affects his ability to pay attention and maintain concentration. He testified that his short-term memory is diminished and that he

repeats himself in conversation and that he has to read an item five or six times before he understands it.

Plaintiff stated that he does a little housework and prepares meals a few times a week. He does the laundry and goes grocery shopping for his children. His children help with household chores. Plaintiff testified that he is able to drive approximately one hour and can bathe and dress himself. Although he can no longer enjoy a wood-working hobby, he is able to use a computer for email. He belongs to no social organizations, but does visit with his brother.

Plaintiff testified that he takes no medication other than over-the-counter Motrin once in a while. The Motrin does not really help the pain, Plaintiff stated, only deadens it. He tried prescription pain medications in the past, but the side effects were intolerable.

## E.     George Williamson's Testimony

At the administrative hearing, George Williamson, Plaintiff's brother, testified that Plaintiff's use of his right arm was limited and he held it as though it was painful. He further testified that Plaintiff has difficulty focusing and paying attention.

## F.     Vocational Expert Testimony

At the hearing on May, 8, 2009, the ALJ asked the VE whether significant numbers of jobs existed for an individual who could perform light work, but was restricted from using his dominant hand more than occasionally as an assist. The ALJ instructed the VE that the individual could do no fingering or lifting with the dominant hand and was limited from temperature extremes or vibrating machinery. In response, the VE testified that numerous jobs existed in Illinois for such an individual, including part-time crossing guard (3,500), mail clerk (4,500), and gate tender (8,200), and that these jobs would be elsewhere in the national economy in similar numbers. The VE further

testified that an added restriction of no reaching would not affect the individual's ability to perform those jobs, but that inattentiveness or inability of the employee to pay attention more than ten percent of the time would lead to termination of the job.

**D.      The ALJ's Decision**

On July 10, 2009, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 26, 2005, and that he suffered from the severe impairment of CRPS.  However, the ALJ determined that this condition did not meet or equal any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work involving the lifting and carrying of ten pounds frequently and twenty pounds occasionally.  The ALJ further determined that Plaintiff could use his dominant upper extremity only occasionally as an assist, and that he could not lift, reach, or finger with his dominant hand, and that he needed to avoid temperature extremes and the use of vibrating machinery.

While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects to be not credible to the extent that they were inconsistent with the RFC assessment.  The ALJ further found that Plaintiff's credibility was undermined by his refusal to take prescription painkillers and only intermittent use of over-the-counter painkillers.  The ALJ relied upon the opinions of Dr. Greatting, Dr. Ritchie, and the state agency doctors who examined Plaintiff when he indicated that light work was appropriate for Plaintiff.  Based on the testimony of the VE, the ALJ concluded that Plaintiff could not perform any past relevant work, but that he did meet the requirements of representative occupations such as crossing guard, mail clerk, and gate

tender, and was therefore not disabled.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by improperly evaluating Plaintiff's RFC, improperly evaluating Plaintiff's credibility, and improperly relying on VE testimony. The

Commissioner argues that the ALJ's decision was appropriate and supported by substantial evidence. The Court will consider each of Plaintiff's arguments in turn.

## A.       Credibility

Plaintiff contends that the ALJ's credibility finding was improper because it used boilerplate language and was inconsistent regarding the issue of Plaintiff's pain management. The Commissioner contends that the ALJ adequately explained his reasons, those reasons are supported by the record, and the ALJ's finding was not internally inconsistent.

Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)       The individual's daily activities;
(2)       Location, duration, frequency, and intensity of pain or other symptoms;
(3)       Precipitating and aggravating factors;
(4)       Type, dosage, effectiveness, and side effects of any medication;
(5)       Treatment, other than medication, for relief of pain or other symptoms;
(6)       Other measures taken to relieve pain or other symptoms;

(7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  In making a credibility determination, Social Security Ruling 96–7p

states that the ALJ must consider the record as a whole, including objective medical evidence, the

claimant's statement about symptoms, any statements or other information provided by treating or

examining physicians and other persons about the conditions and how they affect the claimant, and

any other relevant evidence.  *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant

or to find a disability each time a claimant states he or she is unable to work.  *See Rucker v. Chater*,

92 F.3d 492, 496 (7th Cir. 1996).  However, Ruling 96–7p provides that a claimant's statements

regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely

because they are not substantiated by objective evidence."  SSR 96–7p at *6.  An ALJ's credibility

determination is entitled to substantial deference by a reviewing court and will not be overturned

unless the claimant can show that the finding is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d

731, 738 (7th Cir. 2006).

Plaintiff first contends that the ALJ made an improperly conclusory credibility finding that

relied on boilerplate language in making his credibility determination.  In particular, Plaintiff points

to the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence, and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above

residual functional capacity assessment."  If the sentence cited by Plaintiff encompassed the totality

of the credibility finding in the ALJ's decision, it would indeed be improper.  *See Parker v. Astrue*,

597 F.3d 920, 922 (7th Cir. 2010).  However, as the Commissioner argues, the ALJ did not limit

himself to a conclusory statement regarding Plaintiff's credibility.  Instead, the ALJ considered a

number of factors before concluding that Plaintiff was less than credible, including Plaintiff's testimony regarding the pain in his arm, his treatment records, and the medical opinions in the record.

Plaintiff also argues that the ALJ's credibility finding was internally inconsistent. Specifically, Plaintiff argues that it was inconsistent for the ALJ to find, on the one hand, that Plaintiff's "generally conservative treatment," and failure to take pain medication detracted from his credibility regarding his pain, while on the other hand acknowledging that Plaintiff was intolerant of the side effects of the stronger prescription pain medications, was not eligible for additional treatments, and that his doctors released him from care because there was nothing else they could do to help him improve. The Commissioner contends that the ALJ's statements are not inconsistent because they are an articulation of why Plaintiff was not credible with regard to his disabling pain.

The Court recognizes the deference that is to be afforded to the ALJ's credibility determination, but is concerned with the logical gaps in the ALJ's explanation of his reasoning. He concludes that the side effects and ineffectiveness of medications and other treatments help explain the course of Plaintiff's treatment, but then, immediately after noting that Plaintiff's pain treatments have not been effective in alleviating the pain, the ALJ goes on to state that "it is unusual, when pain is so severe that it interferes with all activities and with concentration/attention, for a patient to refuse medication that could alleviate such pain." (R. at 53). He also questions Plaintiff's failure to take over the counter medication regularly, apparently concluding either that Plaintiff's testimony that those pain medications were ineffective was not to be believed or that his pain was not severe. The Court also notes that the ALJ did not obtain any testimony from a medical expert at the hearing,

and did not discuss whether Plaintiff's testimony about the effectiveness and side effects of his pain treatment was consistent with the medical evidence in the record.

The Court cannot conclude that the ALJ's determination was "patently wrong" and declines to reverse the ALJ's decision on this issue. However, since the case is being remanded for other reasons, as explained below, on remand the ALJ is directed to more clearly address the issue of whether Plaintiff is choosing not to participate in treatments that could have a measurable affect on his pain, including obtaining medical testimony or the report of a medical expert, as necessary, to understand the limitations of the treatment options and what Plaintiff's treatment choices reveal about the amount of pain he is experiencing. In his new opinion, the ALJ is directed to lay out his conclusions in a way that allows the Court to fully trace the reasoning behind his determination that Plaintiff is less than credible.

**B.      Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ committed error by finding that Plaintiff could use his dominant upper extremity as an assist; by inadequately analyzing Plaintiff's complaints of right arm pain; and by not addressing Plaintiff's mental impairments. The Commissioner argues that the ALJ based his decision that Plaintiff could use his right arm occasionally as an assist on the medical evidence of record, and that the ALJ reasonably evaluated Plaintiff's mental impairments.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n. 2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96–8p, 1996 WL 374184 (Jul. 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the

relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC

finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at a RFC,

the ALJ "must consider all allegations of physical and mental limitations or restrictions and make

every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR

96–8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an

individual's impairments, even those that are not 'severe' "because they "may—when considered

with limitations or restrictions due to other impairments—be critical to the outcome of a claim."

*Id*. Although the ALJ need not discuss all the evidence, he must consider all the evidence that is

relevant to making a determination of disability and give enough information to allow for

meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96–8p. "SSR 96–8p

requires that medical source opinions must always be considered and addressed by the ALJ in the

RFC assessment." *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006).

1.   Using Right Hand to Assist

Plaintiff argues that the ALJ's determination that Plaintiff could use his right arm

occasionally as an assist is an independent medical determination unsupported by the record. The

Commissioner argues that the ALJ's determination was reasonable, and that the ALJ relied on both

treating and examining physicians in making his determination.

As the Commissioner points out, a number of Plaintiff's physicians, both treating and

examining, concluded that Plaintiff could do work that did not entirely preclude the use of his right

arm on occasion.   Plaintiff contends that opinions by Dr. Salvacion and Dr. Kozma conflict with

the above determinations. Dr. Salvacion opined that Plaintiff had a very limited use of his right arm,

while Dr. Kozma noted decreased grip strength in Plaintiff's right hand and neuropathy.

ALJs are not allowed to make their own independent medical determinations. *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009). However, on review, courts should give the ALJ's decision a "commonsensical reading rather than picking at it." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)) (quotation marks omitted). In this case, although no doctor explicitly stated that Plaintiff could use his right arm occasionally as an assist, the ALJ's RFC determination about Plaintiff's arm use takes into account the limitations on the record and does not conflict with any of the medical opinions. Neither Dr. Salvacion nor Dr. Kozma opined that Plaintiff could not use his right hand at all, and other physicians found that Plaintiff was capable of using his right arm occasionally, with limitations that are contemplated in the ALJ's conclusion that Plaintiff could use it occasionally but only as an assist. Therefore, the ALJ's decision regarding Plaintiff's ability to use his right arm occasionally as an assist will not be disturbed.

### 2. Arm Pain

Plaintiff next argues that the ALJ improperly analyzed Plaintiff's complaints of arm pain when determining Plaintiff's RFC. The Commissioner failed to respond specifically to this argument in his brief.

Social Security Ruling 03-02p, which pertains to CRPS, instructs that "careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 03-02p, 2003 WL 22399117, at *7 (Oct. 20, 2003). In this case, the ALJ explicitly addressed how the RFC takes into account increased pain with temperature extremes and vibration, and explained that the RFC was compatible with the work-related limitations given by Plaintiff's

physicians. However, as described above, the Court has some concerns with how the ALJ reached his conclusion about the amount of plain that Plaintiff actually experiences. Accordingly, on remand, after he articulates his conclusions about Plaintiff's pain, the ALJ is directed to explain how the RFC accounts for that pain and the limitations or restrictions it imposes on Plaintiff's ability to sustain work.

### 3.   Mental Impairments

Plaintiff argues that the ALJ failed to adequately address Plaintiff's mental impairments in his RFC determination. The Commissioner contends that the ALJ properly considered Plaintiff's mental impairments when determining that the alleged impairments would not cause Plaintiff any limitations.

First, Plaintiff argues that the ALJ's decision did not accommodate his symptoms of depression. Plaintiff points to Dr. Morgan's opinion that Plaintiff experienced "increasing depression with a sense of loss regarding his altered lifestyle" and that "his anxiety and depression remain and have a significant negative effect on treatment outcome." (R. at 305). Plaintiff also expressed to Dr. Morgan that he had low energy, loss of pleasure, irritability, feelings of uselessness, disrupted sleep, and a weight loss of 20 pounds over nine months. (R. at 304). The Commissioner argues that the ALJ properly relied on the Plaintiff's refusal to seek any mental health treatment and his testimony at the administrative hearing that he suffered no problems that would limit his ability to work other than his CRPS in support of his conclusion that there is no evidence of severe psychological manifestations.

The Seventh Circuit has long held that an ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice*, 384 F.3d at 370 (quoting *Diaz*, 55 F.3d

at 308).  Moreover, a plaintiff's refusal to seek treatment for an impairment can undermine a claim of impairment.  *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (in a situation where the plaintiff "never saw a mental health care specialist about her depression," the "repeated failure by [the plaintiff] to seek medical treatment provides support for the ALJ's credibility finding.").  In this case, the ALJ explicitly considered the fact that Plaintiff refused all treatment for any symptoms of depression and relied on Plaintiff's own testimony that he suffered from no problems outside of CRPS that would limit his ability to work, evidence that provided a sufficient basis for the ALJ's conclusion that Plaintiff was not limited by any symptoms of depression associated with his pain.

Next, Plaintiff argues that the ALJ did not sufficiently analyze Plaintiff's difficulties with concentration and memory.  The Commissioner contends that the ALJ properly acknowledged Plaintiff's problems with concentration and memory and concluded that they were not severe enough to impact Plaintiff's ability to work.

The Commissioner is correct that the ALJ acknowledged Plaintiff's testimony about his difficulties with memory and concentration, but the ALJ did not discuss any limitations that would be caused by those difficulties or even include a statement in his decision regarding whether or why he found those particular limitations credible.  Although the Commissioner may be correct that the ALJ intended for the accommodations in the RFC to also take into account the Plaintiff's limitations in concentration and memory, the ALJ did not include any indication of that in the record.  In this instance, the ALJ failed to build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Scott*, 297 F.3d at 595 (quotations omitted).

Accordingly, the Court remands this matter for further consideration of how Plaintiff's

problems with concentration and memory limit his ability to work. On remand, the ALJ is directed to clearly articulate the combined effects of Plaintiff's physical and mental impairments, including his reported problems with concentration and memory, and how they are taken into account by his RFC.

## C.      Vocational Expert Testimony

Plaintiff argues that the mail clerk position discussed by the VE created a conflict between the DOT and the ALJ's determination that Plaintiff was incapable of lifting, reaching, or fingering with his right hand because the mail clerk position requires frequent fingering and reaching. The Commissioner contends that any error committed by the ALJ for determining that Plaintiff could work as a mail clerk is harmless because a significant number of gate tender jobs are still available to him.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543. In addition, the ALJ must make certain the jobs the VE identifies are consistent with  Plaintiff's DOT reasoning level. *Prochaska*, 454 F.3d at 735.

"Under SSR 00–4p, ... the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable

explanation." *Terry v. Astrue*, 580 F.3d at 477. Specifically, SSR 00–4p requires:

> When a VE or VS provides evidence about the requirements of a job
> or occupation, the adjudicator has an affirmative responsibility to ask
> about any possible conflict between that VE or VS evidence and
> information provided in the DOT. In these situations, the adjudicator
> will:
>
> > Ask the VE or VS if the evidence he or she has provided
> > conflicts with information provided in the DOT; and
> >
> > If the VE's or VS's evidence appears to conflict with the
> > DOT, the adjudicator will obtain a reasonable explanation for
> > the apparent conflict.

SSR 00–4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). "SSR 00–4p places an affirmative duty on the

ALJ to resolve conflicts between the evidence the VE has provided and the Dictionary of

Occupational Titles after the VE has testified. The ALJ cannot transfer his duty to the VE." *Kallio*

*v. Astrue*, No. 2:07–CV–406, 2009 WL 500552, at *9 (N.D. Ind. Feb. 27, 2009) (citations omitted).

It is the responsibility of the ALJ to resolve inconsistencies between the VE's testimony and the

DOT. *Prochaska*, 454 F.3d at 736.

Here, the ALJ failed to discuss inconsistencies between the DOT entry on the mail clerk

position and Plaintiff's limitations regarding the use of his right hand. Although the ALJ determined

that Plaintiff cannot reach, lift, or finger with his right hand, the job of mail clerk requires frequent

fingering and reaching. *See* Dep't of Labor, Dictionary of Occupational Titles 209.687-026, 1991

WL 671813 (G.P.O.) (4th ed, rev'd 1991). The Commissioner does not dispute the inconsistency,

but contends that Plaintiff meets the requirements for the other full-time occupation determined by

the VE, the gate tender position, and therefore any error committed by the ALJ is harmless.

An ALJ's failure to resolve conflicts between VE testimony and the DOT may be harmless

when a significant number of other jobs are available to a plaintiff. *See Ketelboeter v. Astrue*, 550

F.3d 620, 626 (7th Cir. 2008) (an ALJ's failure to resolve a conflict between VE testimony and the DOT was harmless when the plaintiff could perform other jobs); *Vanschoyck v. Astrue*, 3:08-CV-350-JVB, 2009 WL 2840953, at *12 (N.D. Ind. Sept. 2, 2009) ("an ALJ's failure to comply with SSR 004-p may be harmless error when a significant number of jobs remain unchallenged from the VE's testimony"). In the present case, the VE testified that 8,200 gate tender jobs were available to Plaintiff, a significant number. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (4,000 jobs is unquestionably significant); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 jobs is a significant number); *Vanschoyck*, 2009 WL 2840953, at *12 ("The 2,250 to 3,000 jobs available to Plaintiff are a significant number of jobs"). Accordingly, because a significant number of jobs are available for Plaintiff in the national economy, the ALJ's error is harmless.

In his reply brief, Plaintiff raises the argument that he does not have the skills required to transfer to a gate tender position. This argument is waived, however, because Plaintiff failed to raise it in his opening brief. *See Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir. 1987) ("Issues may not be raised on appeal for the first time in a reply brief as a ground for reversal.") (citation omitted); *Perry v. Astrue*, No. 1:11-cv-00157-DJM-JMS, 2012 WL 896350, at *4 n.4 (S.D. Ind. Mar. 15, 2012) ("waiting until the reply brief to make arguments that could have been made in an opening brief is too late [because t]hat tactic does not give the Commissioner an opportunity for response").

## E.    Remedy

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. Here, the ALJ's opinion was not supported by substantial evidence because he failed to fully develop the record, as

described above. Further, although Plaintiff requests an award of benefits, he fails to present a developed argument in favor of doing so.

The ALJ must address the Plaintiff's credibility, experience of pain, and the combined effect of his mental and physical impairments, including pain, on his RFC. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Court finds that the ALJ failed to sufficiently articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning. *See, e.g., Scott*, 297 F.3d at 595. An ALJ must give enough information for the reviewing court to consider his reasoning and be assured that all of the important evidence was properly considered. In this case, the ALJ failed to describe the weight he gave to Plaintiff's limitations in concentration and memory and how or if he addressed those limitations in his RFC finding. Therefore, to this extent the Court **GRANTS** the Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion. However, the Court **DENIES** Plaintiff's request to award benefits.

SO ORDERED this 30th day of March, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record